IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE DELANEY<br>5224 East Capitol Street N.E.<br>Washington, D.C. 20019<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA<br>441 4th Street, N.W.<br>Washington, D.C. 20001<br><br>    Defendant.<br><br>Serve:  Mayor Muriel Bowser<br>        1350 Pennsylvania Ave., N.W.<br>        Suite 316<br>        Washington, D.C. 20004<br><br>        Office of the Attorney General<br>        441 4th Street, N.W.<br>        Suite 600 S<br>        Washington, D.C. 20001 | Case No.: _____<br><br><br><br><br><br><br><br><br>Jury Trial Demanded |

## **COMPLAINT**

Tyrone Delaney ("Plaintiff"), by and through counsel, complains of District of Columbia ("Defendant") and alleges as follows:

## **JURISDICTION AND VENUE**

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff has exhausted his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission on or about August 28, 2015 and he received his notice of right to sue on or about August 28, 2017.  This Complaint has been timely filed within the 90-day timeframe.

4. Plaintiff filed another charge of discrimination with the District of Colombia Office of Human Rights on or about August 17, 2017 and he received the dismissal on or about September 22, 2017.  This Complaint has been timely filed within the timeframe.

## THE PARTIES

5. Plaintiff Tyrone Delaney resides at 5224 East Capitol Street N.E., Washington, D.C. 20019 and was formerly employed by Defendant's Agency District of Columbia Department of Public Works ("DPW").

6. On information and belief, Defendant is a municipality organized under the laws of the United States and has its offices at 441 4th Street, N.W., Washington, D.C.  20001.

## FACTS

*Background Information*

7. On or about July 27, 2004, DPW hired Plaintiff as a Sanitation Worker.

8. In or around 2009, Plaintiff sustained a work-related back injury which resulted in his suffering from lumbar disc herniation, lumbar radiculopathy, and lower back pain.

9. These medical conditions are permanent disabilities that substantially limit Plaintiff's major life activities including but not limited to his ability to walk, stand, lift, sleep, and run.

10. Plaintiff also suffers from a chronic foot condition which is a permanent disability that substantially limits his major life activities including but not limited to his ability to walk,

stand, and run and prevents him from wearing steel toe or composite boots.

11. After taking medical leave for Plaintiff's injury, he returned to work and requested reasonable accommodations.

12. Plaintiff was at all times a qualified individual with a disability that could perform the essential functions of his position with reasonable accommodations.

13. In response to Plaintiff's medical restrictions, DPW accommodated Plaintiff by assigning him to a clerical position where his job performance was always satisfactory.

*April 2014 – DPW Reassigns Plaintiff with Alleged Restructured Duties*

14. In or around April 2014, DPW revoked Plaintiff's reasonable accommodation (clerical position) without any interactive dialogue or change in circumstances.

15. DPW issued a letter to Plaintiff that purported to accommodate him with "restructured duties" which were supposed to be limited to directing traffic, cleaning trash and debris from rear scales not to exceed 30 pounds, cleaning behind the "Grappler," and general cleaning of the transfer station facility and roadways at the Fort Totten and Benning Road stations.

*DPW Failed to Accommodate Plaintiff with New Duties and
Discriminated and Retaliated Against Plaintiff*

16. However, Plaintiff's supervisors John Carter and Sheila Colclough routinely disregarded his reasonable accommodations and directed Plaintiff to perform work outside of his medical restrictions.

17. When Plaintiff refused to perform these duties, Plaintiff's supervisors threatened him with discipline and termination.

18. On several occasions, Plaintiff's opposition to his supervisors' failure to accommodate him resulted in him being sent home and charged absent without leave ("AWOL").

19. In addition to unjustified discipline, Plaintiff's supervisors subjected him to heightened scrutiny by monitoring his arrival/departure times and work performance more than any other employees.

20. When Plaintiff's supervisors were unable to find any infractions, they resorted to false allegations and accused Plaintiff of being AWOL when he was actually working or had approved leave.

21. On an almost daily basis, Plaintiff's supervisors were rude to him and attempted to argue with him.

22. Plaintiff's supervisors made it clear that he would not be accommodated but Plaintiff needed his job so he tried to perform duties outside of his medical restrictions.

*August 2015 – Plaintiff is Subjected to More Threats, Discipline,  
and Files EEOC Complaint*

23. On or about August 4, 2015, Mr. Carter threatened Plaintiff's job and stated that he should not have any "privileges" in reference to Plaintiff's reasonable accommodations.

24. On or about August 6, 2015, Mr. Carter charged Plaintiff with AWOL when he refused to perform work outside of his medical restrictions.

25. On or about August 28, 2015, Plaintiff filed a Charge of Discrimination with EEOC.

*DPW Offers Plaintiff the Same Reasonable Accommodations from 2014  
that DPW has Refused to Provide*

26. On or about September 11, 2015, Plaintiff met with his supervisors and reiterated his requests for reasonable accommodations.

27. On or about September 16, 2015, DPW sent Plaintiff a letter in response to his request for reasonable accommodations that offered the same job duties that were identified previously as a permanent accommodation.

28. Plaintiff accepted this offer and attempted to perform job duties assigned that were outside

4

of his medical restrictions to keep his job.

29. Plaintiff suffered extreme anxiety and stress as a result of the constant criticism by his supervisors and threats to his job.

*DPW Requests Plaintiff Submit Updated Medical Documentation when*
*DPW had Granted a Permanent Reasonable Accommodation*

30. On March 9, 2017, DPW asked that Plaintiff provide updated medical documents for his accommodations by March 24, 2017.

31. Plaintiff requested an extension because he was unable to schedule an appointment with his physician until March 27, 2017 due to the short turnaround time and he promptly returned the medical documentation on March 29, 2017.

32. The March 29, 2017 note was a Certification of Health Care Provider for Employee's Serious Health Condition form that was provided to Plaintiff by DPW when DPW instructed Plaintiff to get a new note.

33. The note stated that Plaintiff was unable to push, lift, or bend repetitiously with 20 lbs. without causing a flare up of his conditions.

34. The note also provided Plaintiff's diagnoses of lumbar disc herniation and lumbar radiculopathy.

35. The note was signed by the doctor who treats Plaintiff's back condition, Dr. Andres Mendez-Munoz.

36. At that time, Plaintiff was also unable to wear steel toe or composite boots because he had experienced pain while wearing his work boots.

37. Plaintiff provided DPW a doctor's note from his podiatrist, Dr. Amit Luhadiya, dated August 22, 2016 stating that he should not wear steel toe or composite boots.

*DPW Revokes Plaintiff's Permanent Reasonable Accommodations*
*of Limited Duties without Justification*

38. On May 1, 2017, DPW revoked Plaintiff's reasonable accommodations (limited duties) and informed Plaintiff that he was required to perform the duties of his position without any accommodations for his back disabilities.

39. Plaintiff repeatedly requested that he be provided the reasonable accommodation of limited duties he had been provided since 2014 but his supervisors ignored his requests and sent him home because Plaintiff could not perform full-duty without reasonable accommodations.

40. On May 8, 2017, DPW EEO counselor Gail Heath told Plaintiff that DPW did not have medical documentation to support continued accommodation of light duties.

41. Ms. Heath claimed that the only medical documents in DPW's possession required reasonable accommodations for Plaintiff's inability to wear steel toe boots, which DPW attempted to accommodate by providing a shoe insert.

42. This is false, DPW's September 16, 2015 letter to Plaintiff identified that the reasonable accommodation of restructured duties was permanent and Plaintiff's recent March 29, 2017 medical documents stated otherwise.

*DPW Refused to Engage in the Required Interactive Process*

43. On May 8, 2017, Plaintiff forwarded Ms. Heath the March 29, 2017 medical note.

44. Ms. Heath claimed that DPW was not required to accommodate Plaintiff because that note was on a Certification of Health Care Provider for Employee's Serious Health Condition form which she claimed could only be used for Family Medical Leave Act leave.

45. Ms. Heath claimed this even though this was the form DPW instructed Plaintiff to provide to his doctors to fill out and return to renew his reasonable accommodations.

46. Plaintiff requested the new form DPW identified for his doctor to complete.

47. DPW refused to accommodate Plaintiff or engage in the interactive process even though they had a March 29, 2017 note from his doctor.

48. On June 1, 2017, Plaintiff provided DPW a doctor's note with the same restrictions as the March 29, 2017 note on an ADA form.

49. DPW ignored the note.

50. DPW has repeatedly ignored Plaintiff's requests that DPW provide Plaintiff the reasonable accommodations it provided him from 2014 until 2017.

51. From May 9, 2017 until August 4, 2017, Plaintiff repeatedly asked his supervisors and EEO counselors to accommodate Plaintiff or at least tell him why he was not being accommodated.

52. In addition, Plaintiff's counsel requested reasonable accommodations on Plaintiff's behalf by contacting DPW's counsel Nakeasha Small-Sanders.

53. No one has responded other than DPW EEO counselor Gail Heath who only stated she "recused," herself from EEO counseling Plaintiff on the claims as is her duty as the agency EEO officer.

54. Ms. Heath also refused to forward Plaintiff's request for counseling to other EEO counselors.

55. Plaintiff attempted to contact other agency EEO counselors on several occasions for counseling.

56. No counselor responded or accepted Plaintiff's complaint for counseling.

57. Since DPW denied Plaintiff's reasonable accommodations for his back disability in May 2017, he has been effectively removed or constructively discharged from employment and unable to report to work due to DPW's refusal to accommodate him.

7

58. Defendant's denial and its refusal to grant Plaintiff reasonable accommodations is unjustified and would not cause Defendant any undue burden.

59. Plaintiff has received AWOLs based on his inability to work, despite his continued and repeated requests to be returned to work with the accommodations he received since 2014.

## JURY DEMAND

60. Plaintiff demands a trial by jury.

## COUNT 1

61. Plaintiff repeats and realleges paragraphs 1-60 as if fully set forth herein.

62. By and through its conduct, DPW violated the ADA by discriminating against Plaintiff and constructively discharging him from his employment because of his disability, its perception of him as if he were disabled, and its record of his disability.

## COUNT 2

63. Plaintiff repeats and realleges paragraphs 1-62 as if fully set forth herein.

64. By and through its conduct, DPW violated the Rehabilitation Act by discriminating against Plaintiff and constructively discharging him from his employment because of his disability, its perception of him as if he were disabled, and its record of his disability.

## COUNT 3

65. Plaintiff repeats and realleges paragraphs 1-64 as if fully set forth herein.

66. By and through its conduct, DPW violated the ADA, codified at 29 U.S.C. § 12112(b)(5)(A), by failing to engage in the interactive process and denying Plaintiff reasonable accommodations for his disabilities.

## COUNT 4

67. Plaintiff repeats and realleges paragraphs 1-66 as if fully set forth herein.

68. By and through its conduct, DPW violated the Rehabilitation Act, codified at 29. U.S.C. § 794(d), by failing to engage in the interactive process and denying Plaintiff reasonable accommodations for his disabilities.

## COUNT 5

69. Plaintiff repeats and realleges paragraphs 1-68 as if fully set forth herein.

70. By and through its conduct, DPW violated the ADA by subjecting Plaintiff to disparate treatment and constructively discharging Plaintiff in retaliation for requesting reasonable accommodations.

## COUNT 6

71. Plaintiff repeats and realleges paragraphs 1-70 as if fully set forth herein.

72. By and through its conduct, DPW violated the Rehabilitation Act by subjecting Plaintiff to disparate treatment and constructively discharging Plaintiff in retaliation for requesting reasonable accommodations.

## COUNT 7

73. Plaintiff repeats and realleges paragraphs 1-72 as if fully set forth herein.

74. By and through its conduct, DPW violated the D.C. Human Rights Act by discriminating against Plaintiff and constructively discharging him from his employment because of his disability, its perception of him as if he were disabled, and its record of his disability.

## COUNT 8

75. Plaintiff repeats and realleges paragraphs 1-74 as if fully set forth herein.

76. By and through its conduct, DPW violated the D.C. Human Rights Act by failing to engage in the interactive process and denying Plaintiff reasonable accommodations for his disabilities.

## COUNT 9

77. Plaintiff repeats and realleges paragraphs 1-76 as if fully set forth herein.

78. By and through its conduct, DPW violated the D.C. Human Rights Act by subjecting Plaintiff to disparate treatment and constructively discharging Plaintiff in retaliation for requesting reasonable accommodations.

WHEREFORE, Plaintiff demands judgment against Defendant on all Counts and seeks lost wages, front pay and benefits, $500,000 in compensatory damages for pain and suffering, mental anguish, and emotional distress on each count, interest, costs, the amount of tax on any award, and reasonable attorney's fees.

Dated: November 24, 2017                             Respectfully submitted,

/s/_____
Alan Lescht, DC Bar # 441691
Susan L. Kruger, DC Bar # 414566
Rani Rolston, DC Bar # 974052
Alan Lescht & Assoc., PC
1050 17th St., NW, Suite 400
Washington, D.C. 20036
Tel (202) 463-6036
Fax (202) 463-6067
Rani.rolston@leschtlaw.com
*Attorneys for Plaintiff*